IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD J. GIBSON | ) | |
| Plaintiff, | ) | |
| v. | ) | 13 C 03273 |
| THE CITY OF CHICAGO and CHICAGO POLICE OFFICER WATKINS, | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald J. Gibson ("Gibson") filed suit against the City of Chicago and Chicago Police Officer Watkins for violation of his constitutional rights during a traffic stop on February 17, 2013. Gibson filed several counts against defendant City of Chicago, including Count VII for malicious prosecution and Count VIII for the alleged "Negligent Training and Supervision" of the arresting officer, Officer Watkins. Defendant City of Chicago moves to dismiss Counts VII and VIII for a failure to state a claim.[1] For the following reasons, the Court grants the City of Chicago's Motion to Dismiss Counts VII and VIII of the Complaint.

## FACTS

The following facts are taken from Gibson's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Gibson is an individual residing in Chicago, IL. (Compl. ¶4.) Defendant City of Chicago is a municipal corporation and the employer of Officer Watkins. (Compl. ¶6.) On February 17, 2013, Gibson parked his car outside a coffee shop. (Compl. ¶8.)

---

[1] Defendant City of Chicago has answered the remaining counts against it, I-VI (Dkt. 22). Watkins has answered all claims against him (Dkt No. 16).

Officer Watkins, already inside the establishment, told Gibson to move his car. (Compl. ¶10.) Gibson complied with the request and drove onto 87th Street, where he was pulled over shortly thereafter by Officer Watkins. (Compl. ¶¶14-16.)

After he pulled over into a nearby parking lot, Gibson exited his vehicle with his coffee in hand and asked Officer Watkins why he was being pulled over. (Compl. ¶¶16-18.) Officer Watkins then informed Gibson he was under arrest, removed his gun from his holster and pointed it at Gibson. (Compl. ¶¶19-20.) Gibson then called 911 to request a sergeant to the parking lot. (Compl. ¶22.) Another Chicago police officer arrived shortly thereafter and instructed Gibson to place his coffee on the ground and put his hands behind his back. (Compl. ¶¶22-23.) As the officer began handcuffing Gibson, Officer Watkins slammed the plaintiff against the squad car. (Compl. ¶25.) The police officers transported Gibson to the 78th Street police station, where he was charged with violations of the City of Chicago municipal code as well as misdemeanor disorderly conduct. (Compl. ¶¶28-29, 31.) The charges against Gibson were subsequently dismissed. (Compl. ¶¶39-40.)

Gibson alleges in Count VIII that the City of Chicago "owed a duty of reasonable care in regards to the training and supervision of its police department and employed officers of said police department" and that the City "acted willfully and wantonly in failing to properly train" police officers in the areas of proper use of force, de-escalation techniques, determining whether probable caused existed for the crime of reckless conduct, and when to initiate criminal proceedings. (Compl. ¶¶76-78.) Gibson alleges in Count VII, a claim for malicious prosecution, that the City of Chicago and Officer Watkins "maliciously caused criminal charges to be commenced" against him as a result of the Defendants "creating false and incomplete police reports and swearing to false criminal charges." (Compl. ¶70.) The final paragraph of Count VII

states that "This state claim is being pursued against Defendant City of Chicago under both the theory of *respondeat superior* and negligent training." (Compl. ¶74).

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal, not factual, sufficiency of a complaint. To state a claim upon which relief may be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* The court will dismiss a complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

**I.     Count VIII (Negligent Supervision) and Count VII (Malicious Prosecution) Against the City are Both Duplicative of Count VI (*Respondeat Superior*)**

Count VIII of Gibson's complaint consists entirely of allegations that the City enabled Officer Watkins' conduct through the City's negligence in failing to properly train and supervise its police officers despite an alleged history of incidents involving excessive force by its police officers. (Compl. ¶78.) The conduct alleged in the facts of the complaint, however, is entirely the conduct of Officer Watkins, not the conduct of the City. Even taking the facts in the light

3

most favorable to Gibson, as the Court is required at this stage in the proceedings, Gibson's negligent supervision claim is duplicative of the *respondeat superior* claim.

Under Illinois law, the doctrine of *respondeat superior* and the doctrine of negligent entrustment "are simply alternative theories by which to impute an employee's negligence to an employer." *Thompson v. Northeast Ill. Reg. Commuter*, 854 N.E.2d 744, 747 (Ill.App. 1 Dist. 2006); *see also, Gant v. L.U. Transport, Inc.*, 770 N.E.2d 1155, 1159 (Ill.App. 1 Dist. 2002). Under either theory, the liability of the principal is dependent on the negligence of the agent. *Gant*, 770 N.E.2d at 1160.

If a defendant does not dispute that an employee's negligence may be imputed to it under *respondeat superior*, then a cause of action against the employer for negligent entrustment is duplicative and may be dismissed. *Thompson*, 854 N.E.2d at 747. If "it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable." *Gant*, 770 N.E.2d at 1160. Therefore, to allow causes of action for *respondeat superior* and negligent supervision both to stand would improperly allow a jury to assess a principal's liability twice. *Id.* at 1159. Allowing plaintiff to proceed on both theories against the City would thus "create the possibility that an employer's negligent entrustment . . . would result in a greater percentage of fault to the employer than is attributable to the employee." *Id.* at 1160.[2]

Here, the City has accepted the potential for *respondeat superior* liability as a result of Officer Watkins' actions. While the City denies on information and belief the facts that Gibson has alleged against Officer Watkins, the City of Chicago does not dispute that Officer Watkins' negligence, to the extent such negligence is found, may be imputed to the City under the theory

of *respondeat superior*. In its answer, the City states, "On information and belief, City admits that, at all times relevant, Officer Watkins was acting within the scope of his employment as an employee of the Chicago Police Department." (Defendant City of Chicago's Answer to Plaintiff's Civil Complaint, Defenses and Jury Demand ¶ 67.)

Gibson's contention that a claim of negligent training and supervision can proceed as a theory of liability separate from *respondeat superior* inappropriately relies two federal cases, *Glade ex rel Lundskow v. United States*, 692 F.3d 718 (7th Cir. 2012) and *Watts v. Laurent*, 774 F.2d 168 (7th Cir. 1985). Both cases, however, rely upon federal rather than Illinois law. *See Watts*, 774 F.2d at 179 (in a case brought pursuant to section 1983 "an injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions."); *Glade*, 692 F.3d 718 (damages for negligent training available under the Federal Tort Claims Act). But under both § 1983 actions and Federal Tort Claims Act actions, federal common law principles of tort and damages govern recovery. *Id.* at 179. Here, both Count VI (*respondeat superior*) and Count VIII (negligent supervision) are Illinois state tort claims. Therefore, Illinois law under *Gant*, rather than federal law under *Watts* or *Glade*, governs determination of this motion. *Gant* makes clear that in cases in which the employer has admitted *respondeat superior* liability for the alleged actions of its employee, a claim for negligent training, hiring, and entrustment is duplicative of a *respondeat superior* claim and must be dismissed.

This conclusion also compels dismissal of Count VII against the City because Gibson's complaint explicitly pleads that his malicious prosecution claim against the City is being pursued under the theory of *respondeat superior* and negligent training. The City will indemnify Officer Watkins for plaintiff's entire injury if Officer Watkins is found liable under any state law claim,

including the malicious prosecution claim against Officer Watkins. Therefore, as with Count VIII, allowing a separate claim for malicious prosecution against the City would allow plaintiff the potential for impermissible double recovery for the same injury via Count VI. Count VII against the City is dismissed.

## II. Plaintiff Fails to State a *Monell* Claim

Gibson's complaint in Count VIII, while titled "Negligent Training and Supervision," makes allegations regarding the City's policies and practices regarding the training of officers. Although Gibson never explicitly names a policy and practice theory of liability, for the avoidance of doubt this Court must also consider whether Count VIII could proceed under *Monell* theory of liability. *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Construing Gibson's complaint as a policy-and-practice claim, Gibson fails to satisfy the pleading requirements for such a claim under *Monell*.

The purpose of a *Monell* claim is to impose liability on "a government, that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692. In order to state a *Monell* claim, a plaintiff must show (1) that he or she has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. *Id.* at 694-95. To maintain a *Monell* claim against the City, Gibson must "'plead factual content that allows the court to draw a reasonable inference' that the City maintained a policy, custom, or practice" that deprived Gibson of his constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Monell*, 436 U.S. at 694). Additionally, "legal conclusions or elements of the cause of action . . . may be disregarded on a motion to dismiss." *McCauley*, 671 F.3d at 617.

Claims that are fail to allege facts proving that the City adopted an official policy or custom are not sufficient to survive a 12(b)(6) dismissal. *Id.* at 618.

Under the standard set forth in McCauley, Gibson fails to state a *Monell* claim. His complaint fails to allege facts in support of the theory that the City maintains an official policy or custom endorsing police brutality or deprivations of constitutional rights. In particular, Gibson alleges *in toto* the following facts about negligent training:

> [T]he City of Chicago acted Willfully and wantonly in failing to properly train in [proper use of force, proper de-escalation techniques when dealing with ornery citizens, probable cause the crime of reckless conduct, and when and when not to initiate criminal proceedings], given numerous studies, lawsuits, and complaints that have given City of Chicago notice that its employees have not been properly trained in these areas and regularly batter and falsely arrest citizens.
>
> [T]he City of Chicago acted willfully and wantonly in that it has created an entity that ostensibly holds police officers accountable (the Independent Police Review Authority) but in actuality and purpose serves to protect police officers by covering up their batteries and false arrests. (Compl. ¶79.)
>
> Further, the City of Chicago acted willfully and wantonly in that it condones a code of silence among police officers that leads to numerous malicious prosecutions designed to cover up batteries and false arrests. (Compl. ¶80.)

Gibson's complaint fails to provide facts that, if true, prove the City adopted an official policy or custom that intentionally caused the deprivation of his constitutional rights. Gibson's allegations of the City's failure to train police officers does not equate to the City intentionally maintaining a practice of depriving citizens' rights. *See McCauley*, 671 F.3d at 618. Therefore, Gibson fails to state a *Monell* claim. The dismissal of Count VIII against the City does not prevent Gibson from later seeking to amend the complaint to bring a properly pled *Monell* claim; as presently pleaded, however, Gibson may not use Count VIII's negligent supervision claim as a basis to file what amounts to *Monell* charge without satisfying the necessary elements to proceed to discovery on the City's policies.

## **CONCLUSION**

For the reasons stated herein, the City's motion to dismiss Counts VII (against the City) and Count VIII is GRANTED.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 17, 2013